BARKETT, Circuit Judge,
concurring in part and'dissenting in'part:
I concur in the majority’s conclusions that both the initiation and the manner of the strip searches in this case were unconstitutional, and that qualified immunity should have been denied as to the manner of the search. However,' I believe that it was unquestionably clear in 1999 that an investigatory strip search con *1296 ducted without reasonable suspicion is unconstitutional. Thus, although it may make no practical difference here, I would deny qualified immunity as it relates to the initiation of this strip search without reasonable suspicion.
Finally, I would also note that the assertion that “most” members of the Court “are uncertain that jailers are required to have a reasonable suspicion of weapons or contraband before strip searching ... ar-restees bound for the general jail population,” is dicta in this casé, which, as the majority concedes, “provides no opportunity to decide the question... ,”[1]

Stephens Is Not Entitled to Qualified Immunity for the Initiation of the Strip Search

As an initial matter, the majority’s distinction between the initiation of the strip search and the manner of the search appears to have no practical effect here. The initiation of the strip search is certainly- one of the factors pertaining to the overall constitutionality of the search, as is the manner of the search, but it should not be addressed separately for purposes of a qualified immunity analysis. See Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (describing a totality-of-the-circumstances analysis which takes into account “the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted”). However, assuming the appropriateness of such a distinction, the law was clearly established through Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and United States v. Himmelwright, 551 F.2d 991 (5th Cir.1977), that the initiation of a strip search without reasonable suspicion was unconstitutional. Thus, Stephens was not entitled to qualified immunity for either the initiation of the search or the manner in which it was conducted.
In Schmerber, the Court considered whether an arresting officer violated the Fourth Amendment by extracting an ar-restee’s blood without a warrant after validly arresting him for driving under the influence. See Schmerber, 384 U.S. at 758-59, 86 S.Ct. 1826. The Court noted that searches incident to arrest are generally valid, but explained that “the mere fact of a lawful arrest” was not conclusive in this casé. Id. at 769, 86 S.Ct. 1826. In particular, the policy considerations which support the validity of searches incident to arrest “have little applicability with respect to searches involving intrusions beyond the body’s surface.” Id. (emphasis added). The Court explained its reasoning as follows:
The interests in human dignity and privacy which the Fourth Amendment protects forbid, any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the- risk that such evidence may *1297 disappear unless there is an immediate search.
Id. at 769-70, 86 S.Ct. 1826.
The Schmerber Court did proceed to find that based on the “special facts” of that case, the searching officer “might reasonably have believed that he was confronted with an emergency” because the percentage of alcohol in the arrestee’s blood would have diminished before the officer could have obtained a warrant, especially because the investigation of the accident scene and the trip to the hospital had already delayed the blood test. Id.
Both Schmerber and this case concern unusually invasive investigatory body searches incident to arrest — indeed, a strip search like this represents an even more invasive and degrading procedure than a blood draw — and in both cases the object of the search was ostensibly to discover evidence retained within an arrestee’s body. Unlike the officers in Schmerber, however, Stephens cannot argue that this search was precipitated by any emergency. Nor did he have any reason to'believe that the strip search would reveal relevant evidence, while the Schmerber officers did have reason to believe they would find alcohol in the arrestee’s blood. See id. at 768-69, 86 S.Ct. 1826. Thus, the features of the Schmerber search that saved it from violating the Fourth Amendment are absent in this case.
Moreover, even in border searches there was a clearly established minimum requirement of reasonable suspicion for investigatory strip searches by 1999. In United States v. Himmelwright, the former Fifth Circuit held that the Fourth Amendment required reasonable suspicion before an investigatory strip search at the border, finding that “the ‘reasonable suspicion’ standard is flexible enough to afford the full measure of protection which the fourth amendment commands.” 551 F.2d at 995. The court “hasten[ed] to add that ‘reasonable suspicion’ in this context includes a requirement that customs officials have cause to suspect that contraband exists in the particular place which the officials decide to search.” Id,.; see also United States v. Montoya de Hernandez, 473 U.S. 531, 541, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).
If, before 1999, the Fourth Amendment imposed a reasonable suspicion requirement on border strip searches, where authority to search is less constrained than it is in an ordinary domestic search incident to arrest, it is unquestionable that at least the same degree of suspicion was required to conduct the strip searches in this case. Schmerber and Himmelwright clearly established before 1999 that reasonable suspicion was required to conduct an investigatory strip search. Based on the facts of this case, no reasonable officer could have believed that a strip search was justified simply because the arrestees were nervous when stopped by the police and claimed to be lost.

. Article III requires that we consider onLy those "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Thus, staking out a position that reasonable suspicion is not required for strip searches under circumstances not at issue in this case, as Judge Carnes does, intrudes upon the constitutional restraints on the jurisdiction of the federal courts. Even the majority's suggestion that "most" members of the court are uncertain about the reasonable suspicion requirement should occur in a factually relevant case where resolution of that question is necessary to the outcome of the dispute.